Mr. Wren, may it please the court, my name is Keith Wren, I represent the appellant in this case, Mr. Richard Hershey. My client, the plaintiff, was ejected from the public property of the Bossier City arena, not because he violated any law, but because of the content of his speech. The district court correctly found that it was properly alleged that the area from which my client was ejected was either a traditional public forum or a designated public forum. The district court also correctly found that it was properly alleged that viewpoint discrimination on behalf of the defendant police officers had taken place. The district court was incorrect, however, in granting qualified immunity based on its reasoning, which was twofold. One, it found that because the plaintiff had failed to point out any case in which a plaintiff had been ejected from a similar arena, the cases discussing arenas are irrelevant to the current case. The arena cases, all of which focus on what type of forum the arena or the property surrounding the arena is, that's not at issue in this case. It was properly alleged that this is either a court's reliance in the magistrate's important recommendation, which it adopted at page 13, where the magistrate discusses the fact that the plaintiff failed to point out a similar arena case, has no bearing on whether or not the defendants are entitled to qualified immunity. The correct law should be the Chiu v. Plano Independent School District case, where it is said that viewpoint discrimination is a violation of the First Amendment and that it's clearly established. Instead, the district court relied upon an inapplicable case of Morgan v. Swanson. In the Morgan v. Swanson case, it is an unusual case because the district court in that case and ultimately the Fifth Circuit found that viewpoint discrimination had taken place within the educational setting. However, that case itself distinguished itself from Chiu because it said that in that case you're not dealing with the exchange of ideas between adults, as is the case here. In that case, in the Morgan v. Swanson case, both the 2011 and 2014 iterations, the defendants in that case were granted qualified immunity because they had to freedom of religion versus no establishment of religion. That's simply not the case here. Here, my client was ejected simply because of viewpoint discrimination, which is clearly established and therefore the defendant should not be entitled to qualified immunity on that basis alone. Additionally, the district court did not address at all the argument that we made or the plaintiff made below, which was that the defendants failed to provide him with ample alternative channels of communication. If they were going to remove him from the place where he was, handing out his literature in a traditional public forum or a designated public forum, then they also are obliged by clearly established law to provide him with ample alternative means of communication, which they failed to do. They simply unconditionally ejected him from the property. Another thing that the district court never addressed was the reason that Mr. Hershey was told that he was being ejected from the property. He was told by two different individuals why he was being removed. First was Marshal Gilbert, who told him that he was being removed from the property because he was on private property. That was not discussed at all by the district court, but I think it's important. We are told under the case of Anderson v. Creighton that qualified immunity should not be evaluated at too high a level of generality. However, Deputy Marshal Gilbert brings upon himself by telling my client that he's being ejected from private property. The First Amendment has absolutely no application where he is standing, and that is simply not the case. So, in this instance, I think it is important that the court consider that if Marshal Gilbert is telling him that he's being ejected because he's on private property, it brings one of two conclusions. Either one, the Deputy Marshal is incompetent because he's standing on the Bossier City Arena property telling a man that he has to leave because it's private property, and therefore, under Mullinex v. Luna, he's plainly incompetent and not entitled to qualified immunity, or he's simply lying to get him off of the property. Is it possible he had a good faith, if mistaken, but a good faith belief that he was defending private property? Right, and so there are qualified immunity cases that address that. So, for example, and I'm sorry, I can't quote it today, but I believe— You're talking about this case. I welcome you to talk about— No, I— But given the facts as you understand them in this case, I realize this is a motion to dismiss, but is it possible that they'll have a good faith basis for thinking, mistakenly, perhaps, that they're on private property? I don't see how. It's the Bossier City Arena. You know, various companies have naming rights, and they can name it whatever they want to, but it's clearly not a private business on private land, such as a Wendy's or some private restaurant. So, I don't think that that could be the case, and certainly not at this stage of the proceedings should that even figure in. But back to my point is we're not supposed to evaluate qualified immunity at too high a level of generality, except for what Mr. Marshall Gilbert is conveying is that I'm not obliged to engage in a balancing test here. He's saying you just have to leave the property. What is CenturyLink? I'm sorry? What is CenturyLink? I think they're a cell phone company. I don't know exactly, and I think actually now it's called Brookshire's Arena. It's not even called that anymore, and I think that... I'm sorry? CenturyLink was not a government entity. No, they simply have the naming rights, and to be clear, so throughout the briefs, the security guards are referred to as the CenturyLink defendants. I think that one of them, Mr. Harvey, identified himself as what he said made it sound like he was an employee of CenturyLink. I think that he's actually an employee of ASM Global, which is a management company hired by the Bossier City Arena to manage the property. It was simply easier to refer to them as the CenturyLink defendants, mainly because Mr. Harvey, in one of the things he said, in the other reasons he was given, my client was given to get off the property, was that CenturyLink has not approved your message, and that actually leads me to the next argument, which is that the CenturyLink defendants or the security guards should be considered joint actors with the Bossier City law enforcement, and that is for two reasons. One, this is clearly a case of joint action. In paragraphs 44 through 48 of the complaint, it is alleged that my client, after he was told by Marshall Gilbert to get off the property because it was private property, turned around to all of the named defendants who were present and presented them with a leaflet that was handed to him by another unrelated leafleteer on the radio station called Power 927, and he asked, well, why do I have to leave if that leafleteer can stay, and what Mr. Harvey said is very important. I believe that's at paragraph 45, and he says that Mr. Hershey's literature had not been approved by CenturyLink and that he had to say merely calling the police does not make you a joint actor with the police, and that's not the case here. If the security guard had called the police and said, hey, Richard Hershey is harassing people, Richard Hershey is breaking things or somehow violating the law, that doesn't make him a joint actor, but what he says is not that. He says that your literature has not been approved by CenturyLink and that he had to submit it for approval, so therefore, based upon what he is saying and as alleged in the complaint, CenturyLink is the arbiter of who can and who cannot remain in the traditional public forum or designated public forum that is the Bossier City Arena. Paragraph 46, the plaintiff turned around and asked him again, well, why do I have to leave if that leafleteer can stay, and what Harvey says at that point is also equally important. He says that he responds that he doesn't know if the other leafleteer's literature has been approved, but that Hershey's had not, and so therefore, he had to leave, and why is that so important? Because if you're kicking people off property because their literature hasn't been approved, it would probably be a very important thing to know whose literature has and has not been approved, so if he says, well, I don't know if hers has been approved or not, then what he's really saying is I don't care whether or not it's been approved, right? If you're out there to kick people off because it's been approved or not, you've got to know whose has, so what he's saying is that he doesn't care, and so therefore, the only conclusion that can be drawn from that is that it's viewpoint discrimination. At that point, all of the defendants moved together to eject my client from the property. You want to talk about your failure to train? I'm sorry? I don't know if you wanted to address your failure to train aspect. So, in that respect, it is alleged in paragraph 20 of the complaint that it has been a custom to allow these police officers the unfettered discretion and the joint actors to determine who or who cannot remain on the property. I allege that that is a result of failure to train, because even if in the most fundamental aspect of First Amendment law, the police officers should be trained that on the public property that is a designated public form or a traditional public form, you cannot engage in viewpoint discrimination. It's the most fundamental element of First Amendment law. I mean, the case law talks about it being axiomatic. Secondly, they're not trained that you have to provide an alternative channel of communication. I think that your complaint is even more fundamental, that they weren't trained on First Amendment issues at all, because they were claiming that there was no First Amendment at all. And they're not trained that they have, that they're on, that it's even public property. No, exactly. So, I think your point is they received literally zero training. Correct. Why they asserted that this was a First Amendment free zone. Correct. This is in paragraph 67 through 70, or is there any other place in the complaint that I should be looking? No, that's it. 67 through 70 is where the failure to train argument is. And so. Well, who did this Christian rock group concert, did they rent it from CenturyLink, or did they rent the hall, if you will, from the, directly from the city of Berkshire? Well, so my understanding is, referring to them as CenturyLink is a matter of convenience. These security guards were actually employees of ASM Global. But everybody, they refer to themselves as representing CenturyLink, so that's why I'm referring to them in here. But Ms. Bonnevere, whose emails are attached, she is the manager of the arena, she works for ASM and goes through that corporation, not through the city of Bozer City. So, additionally, what CenturyLink is doing is they're regulating speech in a public forum. That's a traditional public function. The closest case factually on that is Pendak versus Dart, which is a Seventh Circuit case, and it talks about security guards ejecting panhandlers from Daly Plaza in Chicago. And there's a, it has a long litany of the cases that discuss it, and essentially it says this. It doesn't matter what your contract says or how long you've been doing it, if you're out there regulating speech in public forum, that's a public function. Good afternoon, Your Honors. May it please the Court. My name is Reed Jones, and I represent three of the appellees in this case, the city of Bozer City and its two officers, Deputy Marshal Bobby Gilbert and Officer Daniel Stoll. I'd like to begin, if I may, with the qualified immunity issue, the District Court's dismissal of the officers on those grounds. The District Court correctly dismissed the two Bozer City officers, rightly finding that the appellant, Mr. Hershey, failed to show that his First Amendment right in question was clearly established at the time of this incident in February of 2020. As the magistrate correctly noted in his report and recommendation, which was adopted by the District Court over Hershey's objection, the law in this area is unsettled and highly fact-specific. The plaintiff has relied on general statements of law, and the plaintiff pointed to no controlling authority which would have alerted the Bozer City officers that prohibiting him from leafleting outside of the Century Lake Center during an event was constitutionally prohibited beyond debate. It was Mr. Hershey's burden to establish that his allegedly violated First Amendment right was clearly established at the time of the incident. He failed to do so, and therefore dismissal was appropriate. Does the First Amendment apply to this property? Yes, Your Honor. Yes, Your Honor. This is a public... What's the difficulty here? What's the, I mean, the theory as I understand it from the officers is that the First Amendment doesn't apply. Your Honor, our position is... You're saying it's not clearly established that the First Amendment applies here? Yes, Your Honor. The District Court found that Hershey, Mr. Hershey, had adequately alleged the this was either a public forum or a traditional forum, and so we have not challenged those findings on appeal. Our position on appeal, we assume for the sake of argument that he has stated a claim for the violation of First Amendment. You're saying the officers weren't on notice that this is First Amendment property? Our position is that the officer's conduct was not clearly prohibited by established law at the time. Right. I understand that. That's your general point, but the specific reason, I just want to make sure I understand your argument, the reason that they get QI on the clearly established prong is because it's, this is First Amendment property, but it's not clearly established that this is First Amendment property. Is that your argument? Yes. Yes, Your Honor. Yes, Judge Edwin Clark, and also the corollary to that would be Mr. Hershey failed to point out case law that establishes for these particular types of places and events during events, sporting arenas, etc., that banning someone. Okay, but if this were at City Hall, would we need a case that says, sorry, it's Bossier City, would we need a case that says Bossier City Hall is First Amendment property, or isn't it just kind of obvious that Bossier City, City Hall? Well, I think that's, it's an interesting discussion because my interpretation of the last decade or so of the Fifth Circuit jurisprudence on clearly established law is a two-track system, if you will. One is the typical rule. It's about fair notice, ultimately, right? We don't want, we don't want to chill officers' behavior under the Supreme Court's QI doctrine, but if you're on fair notice, if any reasonable officer should have known this, then we don't require a case. Well, I think the obvious exception to what I would call the normal rule of the plaintiff's burden of proving and showing a case that squarely governs his right, the obvious exception to that is very limited. In fact, in the Bartlett case just a few years ago, this court said that the standard for obviousness is sky high. That was earlier this year in the Bartlett case, and then the Fifth Circuit also said that those obvious cases are exceedingly rare. The only examples I could find of obvious constitutional violations, I could find none in the First Amendment context. I could find an Eighth Amendment case from the Supreme Court, the Hope v. Peltzer case, which was where an inmate was chained to a hitching post for seven hours and not given water or bathroom breaks. The Cole v. Carson case from this court, a Fourth Amendment case, where an officer shot a suspect, and it was clearly, obviously, unconstitutional because the suspect was pointing a gun at his own head. And then the only other case that I'm aware of is another Fourth Circuit case, Alexander v. Round Rock, where someone was detained for being in a parking lot and looking into cars. Those are the only three obvious cases that I'm aware of from this circuit. It's an extremely high bar. I see where Mr. Hershey is going, that this was an obvious violation of his First Amendment rights. But again, that is an extremely high bar, and in the First Amendment context, when you've got conflicting, complicated, as this circuit called it in the Morgan v. Swanson case, abstruse. Is it obvious that a public sidewalk is subject to the First Amendment? I'm sorry, sir. Is it obvious that a public sidewalk is subject to the First Amendment? The public sidewalks are typically considered to be public. In other words, you don't need a case that this, that main street between these three blocks is First Amendment. Almost always, almost always, yes. There are obvious exceptions if there are certain security issues going on or so forth. And again, we discussed at length in the district court briefing, all of the various cases from around the country interpreting how, showing how courts have applied the First Amendment and the form analysis to various sporting arenas. And the law is far from clear. Typically, sporting arenas are not considered traditional public forms. Why were the police officers there in the first place? Police officers were there to protect patrons from coming in and out of the arena. Do you know, I'm just curious, this may not be in the record, who asked them to be there? Was the city asking them to be there? Was it the private contractor that asked them to be there? I don't know that, Your Honor. But they would have several jobs at these types of events. This is the largest event center in our area of the world. They would be ensuring the safe ingress and egress of patrons. They would be just general security for both talent and patrons and any other tasks that may come up. There may be a health crisis, there may be any other sorts of things. But it would be common for the city to staff that center at an event like this. Is there any dispute that this is, in fact, city property? No, Your Honor. So it's city property. I take it it's managed privately. Correct. It's city property. No different than if the government, for all I know, this building is privately managed. I have no idea. Correct, Your Honor. There's no question this is public property. Correct, Your Honor. Okay. And therefore, the police officers are performing their public function to protect public property. That's correct, Your Honor. But our position on the viewpoint discrimination issue is this. Mr. Hershey, the appellant, has defined his rights much too generally. The, again, the current state of the jurisprudence, as far as we know, on clearly established law is that the law must be particularized to the facts of the case. The law must define the right at issue with a high degree of specificity. In this court's... How difficult is it to know that you can't favor commercial speech over religious speech? I'm sorry, Senator. How difficult is it to know that you can't favor commercial speech over religious speech? Well, Judge Hill, I think that goes back to the obviousness issue. And is this an obvious... Right. Is it your point that it's not obvious that... Our contention is this does not fall within the exceedingly rare exception for the obvious cases, which I think is the exception to the general rule that the plaintiff must point to a specific case on... If this individual wanted to come onto this property and pray privately, quietly, without interfering with anybody else's rights, would that be obvious that they could do that? Or is that not obvious? The property in your hypothetical is the courthouse? This property. This property? Which you've said is public. You know what? Let's make it easy. On public property. Is it obvious that an individual can stand in front of the Fifth Circuit's courthouse and pray? The... What I would say is that there is precedent from this court and the Supreme Court saying that viewpoint discrimination is either presumptively unconstitutional or subject to strict scrutiny. So that would be obvious. I'm not trying to put words in your mouth. I'm trying to understand. I think there's a distinction between obvious and precedent. Would it be obvious or would it not be obvious that a person has the right to pray? It sounds like you're saying no. Pray on public property. Again, I do think it depends on what may be happening at that time. Is it being used for some event? Does somebody have it written out? Such as the facts of this case. I think it may be fact-determinant there. And so the... In this court's decision, Morgan v. Swanson, two sets of decisions, the court clearly rejected the position that Mr. Hershey is asserting here. Mr. Hershey is on Chu versus Plano ISD. That viewpoint discrimination is presumptively unconstitutional, period. It's a general rule. It applies to all cases. Morgan v. Swanson, this court twice said that that is far too general and far too abstract to clearly establish the law in that case. Both Morgan and Chu were involved in speech on school campus property. I don't mean to interrupt, but given your time, I wanted to ask about that failure to train. Yes, Your Honor. They've suggested, and I think pled, that there was no training with respect to whether the First Amendment even applies, which is why they answered that it doesn't apply. And I want to give you a chance to... Yes, Your Honor. And it was a little unclear because in paragraph 67 and then the complaint, they say the training wasn't adequate. Sometimes they say they got... It could have been pled more clearly. I'll give you that. But I take the core allegation of this case is, and I think you have conceded this, the allegation is these officers said there is no First Amendment right here at all. To me, that tells me that they were never told that there was First Amendment rights here, and therefore there's no need to do all the training about viewpoint discrimination and designated public forums and whatnot. There simply is no First Amendment analysis right there. I see my time has expired. May I answer the question? I think the cleanest justification for the district court's dismissal and failure to train the allegations was the lack of any allegations on deliberate indifference, being that the plaintiff had not even in conclusive fashion alleged that there was any widespread pattern of violations. We would ask the court to affirm. Thank you. Good afternoon, Your Honors. May it please the court. My name is Mandy Simot. I'm here on behalf of the other appellants, David Smith, Tyshawn Harvey, and Eugene Tucker. They are the private security guards who are employees of ASM Global. As this court has often noted, a pleading that offers labels and conclusions or formulate recitation of the elements of cause of action is insufficient to survive a 12b6 motion. That is the precise issue with regard to the complaint filed against my clients. To state a Section 1983 claim against a private actor, it requires more than simple conclusory statements that three private security guards were acting on the color of Louisiana state law. As this court is well aware, there must be a showing that this private actor's actions are fairly attributable to the state. This court and the Supreme Court have enumerated different tests to do that and to determine whether that is. Whether it's anywhere from a conspiracy to something that's been traditionally upheld as a function of the state. But when we look at the complaint in this case against my client, the allegations are devoid of how my client violated Mr. Hershey's constitutional rights. When we look at the petition, yes, there are claims that his First Amendment and his Fourteenth Amendment rights have been violated. But which rights exactly are we talking about? Is it religion? Is it speech? Is it assembly? It's unknown based on the allegations that are alleged against my clients. If we look at those allegations, we can break them down into about three. One of which was Mr. Harvey was present when an officer made unwanted contact towards Mr. Hershey. That officer also asked Mr. Hershey to leave the premises. Okay. The second one was after... Your theory is that citing the First Amendment is not enough. You have to get more granular than that. Yes, Your Honor. What is your best case for that? There's no case. But we have to look at the allegations against my client. I mean, when you look at those facts, what facts brings it to show that it's a speech? Which one brings it to show that it's religion? I mean, earlier, we talked about viewpoint discrimination. Is it because Mr. Hershey alleges he's vegan? Is it because it's society? I'm not sure what the allegations against my clients are because they're not set forth in the petition. You also asked if he was praying. I don't know if he was praying or not. That could have been one of the reasons he was... It was a hypothetical. Yeah, it was a hypothetical. But was he praying at the scene? I don't know. It wasn't alleged as to why my clients violated any First Amendment rights. So if there would have been, for instance, an allegation that said, you know, Mr. Harvey told Mr. Hershey that, you know, he didn't... But you may be aware, you know, the Supreme Court has said, I apologize, I don't remember the case name, but the Supreme Court has said, reversing us, that it doesn't matter whether you actually say 1983. An allegation of the given that, I'm not... That's why I'm asking you, what case do you have for the proposition that you have to cite something more specific than First Amendment rights? I don't have a case in specific, Your Honor. It's just that the case law with regard to what has to be alleged, there has to be something alleged as to how a First Amendment right was violated. And in this particular case, there's just no allegations as to how that happened. For instance... Should leave be granted to amend? Should leave be granted to amend? The magistrate found no on the basis that this is the Second Amendment, and there was sufficient time with... Before this particular amendment to do discovery. Discovery was actually asked for by the plaintiff, and they did do that discovery, and that's how the names of the private citizens... I'm sorry, you're saying there was two amended complaints, or... A one amended... You mean this is the second complaint? Yes. Right. I only see a complaint and a First Amendment. Yes, I'm sorry. One shot, it's not unusual to have a Second Amendment. It is not. Second amended complaint. Correct. It's not. But in this case, discovery was approved by the district court to allow them to figure out what the officers were. If they knew that, and they had video of this incident, which they did, then all of this could have been amended properly the first time. At this point, we're several years from the incident, and there will be questions of whether some of these things are prescribed later on in this litigation, Your Honor, if reversal occurs. If we continue to look at the allegations against my clients, let's take Smith and Tucker, for example. How is arriving upon a scene after a police officer has asked a citizen to leave a violation of a constitutional right? There's no allegations as to how that violated any right, whether that be the First or the Fourteenth Amendment. So we ask this court to look at the complaints and the allegations in that complaint to see what are we actually alleging against my clients as compared to what's being alleged against the city defendants. And I think if we keep reading this complaint, we're going to see that even if there was an allegation that a specific constitutional violation occurred, plaintiff still has to allege facts that show that my clients were state actors. And in this particular case, there's no dispute that my clients are not. They're private citizens. They were not employed by any government agency. So again, we look at the complaint to see what was alleged. How do they become state actors based on the allegations in the petition? Again, Harvey being at his scene when there was unwanted contact, how does that police officer's actions make Harvey's actions than a state actor? What about Smith and Tucker as arriving at a scene and observing a police— In your view, what allegation or what pleading is required to state a joint actor theory? Something more. You have to have more of a conspiracy, like a common motive, some kind of agreement that the parties agree to some kind of action. In this particular case, we have no real idea of why Mr. Hershey was asked to leave the premises. There is an attachment that indicates that he was harassing people at this place. But there was never an allegation that there was some kind of common motive between the police and the private security guards, or the security guards ever even asked the police to ask Mr. Hershey to leave. So your view is it's not enough to allege that Mr. Hershey was approached by all the officers, private and public, at the same time. There needs to be an allegation of an advanced arrangement, an intention, that sort of thing. Yeah, and even some kind of affirmative action on behalf of the private security— And pardon me, what's the best case on that point that we should be looking at? Yes, Your Honor, let's see. Sorry, we'll brief them in our— Sorry, Your Honor, we need to brief most of those in our brief. I mean, the joint actors, you can get from Lugar, you can get from— I'm asking specifically about this pleading point. There are plenty of cases about joint actor, but you're making a specific pleading argument, right, that it's not enough that they are engaged in a joint action. There has to be, I think in your theory, a pleading of pre-existing discussion, arrangement, intent. Right. Where does that— Let's look at Montgomery. I'm not saying we don't have it. I just want to know where it comes from. No, no, no, no, no. I understand, Your Honor. Let's see. I know one of the cases that Plaintiff talks about was Beville, and we try to distinguish that with Montgomery and with P. Walton, which is an example of showing how the specific allegations need to be made, that it has to be more than just that they're using this willful participant with joint action, that it actually has to be more. And in this particular case, that was the allegation, that my clients were willing participants in a joint action. That's just giving you substantive law or case law. It's not really giving you any facts. And if you look at Montgomery, and I think it was Jarboree, they actually tell you that there has to be specific allegations, Your Honor. Sam, I'm almost out of time. Do you have any other questions? Thank you. Before you get started, do you want to address this pleading point on joint action? First of all, do you have pleading of a preexisting arrangement or motive, or are you just resting on the fact that all the officers appeared together? Well, I mean, they appeared not specifically together. Harvey was there first, and then Smith and Tucker arrived later. But what's important about that is they were all there, the police officers and all of... I see you've got paragraph 28 and other paragraphs. My point is just to address the opposing counsel's argument. They say that's not enough. Previously agreed that they would work together. Do you have that pleading, or do you think that's not required? I don't think that it's required. I think that, you know... No, do you have it? No, I mean, if we take, for example, if, say, my client refused to leave, and all of these officers then laid hands on him, right, and said, we're going to throw you off physically, or take you to jail, whatever. Would we then say, well, why did you do that? Right. So your point is it's not... You can have joint action without previous agreement. Is that your point? Correct, because... What's your best case, if you have one? Well, I think that Beville v. Fletcher is really the best case. Beville, B-E, it's cited in the brief. But they were all present when Harvey told him why he was getting kicked off the property. And then they used, in police terms, their officer presence or command presence to get him to leave. We don't want him to fight, right? If he had, then it would be obvious to say, well, they physically removed him. But we don't want that to happen. No one wants that to happen. So instead, he said, okay, I'm going to leave. Not voluntarily, however. I wanted to get to, Judge Hogan, one of the points you had asked me when I was here initially, and also that you asked Mr. Jones about whether or not there could have been some mistake about whether or not this was a public property. So the case on that that really is important, I think, it's not a Fifth Circuit case. It's POMICTER, P-O-M-I-C-T-E-R v. Luzerne County Convention Center 939 F. 3rd 534. And it's one of the arena cases. And they talk in that case about whether or not this certain area, what type of a forum it is. And they ruled, I think, against the plaintiff in that case. I can't remember. But the important thing that they said in that case was, yeah, this is how we rule today. But if that property had been used for First Amendment activity in the And in this particular case, if you look at Exhibit 1 to the complaint, it's a series of emails between myself and Ms. Bonnevere, who's the manager of the Bossier City Arena. And she states, if the public would like to engage in peaceful protests or distribution of pamphlets, they're free to do so as long as it does not interfere with the safe allowed and traditionally has been allowed. I think they're conceding that this is First Amendment property. I understand. The point is that it's not established well enough to put these officers on notice. Right. And I think that this email that's attached as the Exhibit to the complaint answers that question, that if they're allowing it, especially in this case, they're allowing it for the Power 927 leaflet here, but not... Well, I mean, this is, as I understand it, a CenturyLink. It looks like a private stadium. It has the name on there. It says CenturyLink. What do you make of that argument that an officer in good faith could have saw that and thought, oh, I'm just being nice, helping a private stadium that's got a lot of people on here to protect safety in a private location? Except that they're letting the other leafleteer stay and ejecting my client. Well, but a private company can decide what they want to let on or not. If the First Amendment doesn't apply there, yes, I understand that. I wanted to point out, it was one of the things... Just so I understand, then, the fact that it's... Is there any indicia on this property, or should the officers otherwise have understood that this is public property? Or are you conceding that it's hard for them to know that this was private property? It's the Bossier City Arena. I know that from time to time it changes names, and there's articles in the newspaper about who's buying the naming rights and things like that. I don't know if there's a sign that says, welcome to the Bossier City Arena. I don't know the answer to that. But one other point, the complaint was only amended initially to add the parties once their identity was found, Stoll and Smith and Tucker. Thank you. Thank you. That will complete our arguments this afternoon. These cases are under submission and court will review at 9 o'clock in the morning. Thank you. Thank you.